Dora M. **STANLEY** (next friend) for William D. Stanley, age 9, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE,**
Defendant.

Civ. A. No. 1754.

United States District Court,
W. D. Missouri,
Central Division.

Jan. 18, 1973.

---

Daniel Rogers, Fayette, Mo., for plaintiff.

Wendell K. Smith, Asst. U. S. Atty., W. D. Missouri, Kansas City, Mo., for defendant.

FINAL JUDGMENT DENYING SECRETARY'S MOTION FOR SUMMARY JUDGMENT AND REVERSING DECISION OF THE SECRETARY AND GRANTING PLAINTIFF'S APPLICATION FOR CHILD INSURANCE BENEFITS

WILLIAM H. BECKER, Chief Judge.

This is an action under Section 405 (g), Title 42, United States Code, for review of a determination made by defendant on June 10, 1971, denying plaintiff's claim for child's insurance benefits under Section 402(d)(9), Title 42, United States Code. Plaintiff's petition for review was filed in this Court and several hearings thereon have been held.

On October 22, 1968, plaintiff's next friend originally filed her application for wife's insurance benefits, as provided in Section 402(b), Title 42, U.S.C., on the earnings record of her husband, Willis Stanley. At the same time, she filed an application for child's insurance benefits pursuant to Section 402(d), Title 42, U.S.C., on behalf of her adopted grandson, William D. Stanley. The Social Security Administration denied both applications after initial consideration, and again on reconsideration.

On November 4, 1970, at plaintiff's request, a hearing was held, and the hearing examiner, on December 30, 1970, entered his decision for the plaintiff and found that William D. Stanley was entitled to child's benefits based upon the wage record of Willis Stanley.

The Appeals Council of the Social Security Administration, on its own initiative, reviewed the hearing examiner's decision and on June 10, 1971, rendered a decision reversing the hearing examiner. The decision of the Appeals Council stands as the final decision of the Secretary.[1]

## THE HEARING

After initial denial of the claim and denial on reconsideration, a hearing was held on November 4, 1970, at plaintiff's request before a hearing examiner of the Bureau of Hearings and Appeals.

The resolution of the issue whether William D. Stanley was entitled to child insurance benefits depended upon whether William D. Stanley ("child" hereinafter) met the qualifications of the Social Security Act. In turn these qualifications could be met only if the child was the adopted child of Willis Stanley and Dora M. Stanley under the laws of the State of Missouri prior to his formal legal adoption by Mr. and Mrs. Stanley in state court on October 21, 1968. (Tr. 22.) Dora M. Stanley, when she filed on behalf of the child the application for child's insurance benefits, had alleged that the child was the adopted son of the claimant and her husband, Willis Stanley. (Tr. 22.)

Social Security records indicated that Willis Stanley, the wage earner, was entitled to retirement insurance benefits effective January 1963 since he filed his application on February 5, 1963. (Tr. 22.) The Hearing Examiner also noted that the applicable law, Section 202(d) of the Social Security Act, provided that when a child is adopted after the worker becomes entitled to retirement insurance benefits; the child must not only be legally adopted before the end of the twenty-fourth month following the month in which the worker became entitled to retirement insurance benefits, but also the child must have been receiving at least one-half of his support from the worker for the year before the worker filed application for retirement insurance benefits, and the adoption proceeding must have been started in the month or before the month that the worker filed an application for retirement insurance benefits, or the child must have been living with the worker in that month.

## REVIEW OF THE EVIDENCE

In the hearing the following persons testified: (1) Harold Dexter Stanley, the father of William D. Stanley; (2) Dora M. Stanley, grandmother of William D. Stanley and mother of Harold Dexter Stanley; and (3) Daniel C. Rogers, Esquire, the attorney for the claimant.

Harold Dexter Stanley, the father of William D. Stanley, testified that he was married to Florence K. Stanley about 1957 and was the father of a son, William D. Stanley, who was born March 20, 1962 (Tr. 23); that after he and his wife Florence "broke up" sometime in 1963 he left his son with his parents (William and Dora Stanley) in June 1963; that he returned with his wife to his parents' home in the fall of 1963 after having been gone for sometime (Tr. 23); and that his wife stayed for a brief period at his parents' home and stated to Harold Stanley before she left that she was agreeable to leaving the child with Harold's parents. (Tr. 24.) On September 16, 1963, Harold and Florence Stanley were divorced and the divorce decree awarded Harold Stanley the care and custody of the child.

Dora Stanley testified that her son, Harold Stanley, brought the child to them (the grandparents) in June 1963; that the child has been living with them ever since (Tr. 24); that Florence, the mother of William, stated that the grandparents could have the baby for adoption. (Tr. 24.)

Daniel C. Rogers, Esquire, testified that, as the claimant's attorney who had

---

1. Defendant admits this in the brief filed herein on December 22, 1971, in support of defendant's motion for summary judgment.

also handled the proceedings for divorce of the child's parents, Harold Stanley and Florence K. Stanley, he advised the grandmother and next friend of the child in 1966 to secure a formal written release from the child's mother in order to proceed formally to adopt the child; and that in 1966 the mother of the child was willing to have the child formally adopted by the grandparents. (Tr. 24.)

On December 6, 1966, Florence and Harold signed an affidavit in which they recorded their consent to the formal adoption of the child by the grandparents. On November 20, 1967, the formal petition for the adoption of the child was filed and on October 21, 1968, the adoption petition was granted by the state courts.

### DECISION OF THE HEARING EXAMINER

On December 30, 1970, the hearing examiner, after hearing the evidence, made a decision favorable to the child. In support of the decision, the hearing examiner stated as follows:

"[Dora M. Stanley] further testified that in the fall of 1963, when the child's mother and father (her son) came down, they both stated they were willing to have the grandparents adopt the child and that they said that they would take the child and raise it as their own.

\*　　\*　　\*　　\*　　\*　　\*

"Under these circumstances, the Examiner finds that there has been an equitable adoption and that this adoption took place in the fall of 1963. Therefore the child is entitled to child's insurance benefits.

"The Examiner notes there are letters from the attorney in January 1965 and also in February 1965 which were addressed to Florence Stanley, the natural mother of the child. These letters infer that the grandparents would be willing to consider adoption and the letters more or less infer to the mother that there might be a possibility that unless they could get the child by adoption, they would not be able to continue taking care of the child.

"The Examiner further notes that although a formal consent for adoption was given in 1966 by the mother, the adoption proceedings were not done until October 21, 1968, at which time a decree of adoption was entered. Daniel Rogers, the attorney, explained that there was going to be a problem having court approval for the adoption because of the age of the grandparents and therefore he delayed the formal adoption for this reason.

"The Examiner can understand the problem and realizes that courts do take into consideration the age of the adopting parents and that this was a hurdle in this case, and the attorney's desire to continue the matter until the child had been with the grandparents for such a long period of time that adoption by the grandparents was the only possible course. . . .

". . . [R]ather than to hazard the risk of the mother coming in court and say that she had never given such a consent, . . . the attorney played it safe and for all practical purposes did the right thing from a legal basis by an adoption on the basis of a written relinquishment by the mother. The Examiner believes that at no time had the grandparents not made up their mind to adopt the child and therefore that his statement to the mother that the grandparents might not have made up their mind, was not correct factually, but that the statement was made to the mother on the hope that this might stimulate her to give a written consent so that the adoption could proceed smoothly." (Tr. 25–27.)

Thus the Examiner found that the child was entitled to child's insurance benefits on the wage record of Willis Stanley on the grounds, among others, that the evidence that Mrs. Florence Stanley, the child's mother, came with Harold Dexter Stanley to the grandpar-

ents' home in the fall of 1963 and agreed with the grandparents to allow the grandparents to adopt the child revealed that there was an equitable adoption in the fall of 1963. (Tr. 27.)

The Appeals Council of the Bureau of Hearings and Appeals, Social Security Administration, on its own initiative, reviewed the hearing examiner's decision and reversed it. The following findings and conclusions were made by the Appeals Council:

"1. The wage earner met all requirements for entitlement to old-age insurance benefits when he filed his application therefor on February 5, 1963.

"2. The child, William D. Stanley, was born on March 23, 1962, and was adopted by the wage earner and the claimant on October 21, 1968, more than 24 months after the wage earner became entitled to old-age insurance benefits.

"3. The child is not the natural child or stepchild of the wage earner.

"4. The child was not receiving at least one-half of his support from the wage earner for the year before the wage earner became entitled to old-age insurance benefits.

"5. The child was not living with the wage earner in the months in which the wage earner filed his application for old-age insurance benefits; nor had proceedings for adoption of the child been instituted in or before the month in which the wage earner filed his application for old-age insurance benefits.

"6. There was no unfulfilled contract to adopt the child before or at the time when the wage earner became entitled to child's insurance benefits.

"The decision of the hearing examiner is reversed. It is the decision of the Appeals Council that the claimant is not entitled to child's insurance benefits under section 202(d) of the Social Security Act on behalf of William D. Stanley based on her application therefor dated October 22, 1968." (Tr. 10.)

## STANDARDS OF REVIEW

■ Section 405(g), *supra*, provides for judicial review of the final decision of the Secretary of Health, Education, and Welfare, in the following terms:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."

Under the foregoing statute, and the Administrative Procedure Act, Chapter 5, § 551 et seq., Title 5, U.S.C., the decision of the defendant can be affirmed on reivew by this Court if the following seven standards are met:

(1) the hearing procedures were fair and lawful, Jacobson v. Folsom (S.D.N.Y.), 158 F.Supp. 281;

(2) evidence was received on the material factual issues, Fenix v. Celebrezze (W.D.Mo.), 243 F. Supp. 816;

(3) the findings of fact are supported by substantial evidence, Celebrezze v. Bolas (C.A.8), 316 F.2d 498;

(4) the findings of fact are sufficient to resolve the crucial factual issues, Hayes v. Celebrezze (C.A. 5), 311 F.2d 648, 654, as well as crucial legal issues;

(5) the correct legal standards were applied in determining the ultimate issues, Ferran v. Flemming (C.A.5), 293 F.2d 568, 571;

(6) all regulations of defendant applied in arriving at the decision were lawful and valid as applied in this case, Marion v. Gardner (C.A.8), 359 F.2d 175;

(7) it appears in finding the facts that claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence, the usual burden in administrative proceedings. Sec. 7(c), Ad.Proc. Act; Sec. 556(d), Title 5, U.S. C.; Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362.

On application of these requirements see Pollard v. Gardner (W.D.Mo.), 267 F. Supp. 890, 903.[2]

### REASONS FOR REVERSAL OF DECISION UNDER REVIEW

The decision of the defendant, considered in the light of the above standards, must be reversed because in reversing the hearing examiner the Appeals Council erred in the following respects:

(1) The Appeals Council did not apply the correct legal standards in determining the ultimate issues. As a result, the Appeals Council procedures were not fair and lawful, and

(2) the regulations of defendant applied in arriving at the decision were not lawful and valid as applied in this case.

The legal standards, applicable in these proceedings, for determining the eligibility of an applicant for child's insurance benefits are those set forth in Section 402(d), Title 42, U.S.C., which provides in material parts:

"(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits . . . if such child—

\* \* \* \* \* \*

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed,

. . .

shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits.

\* \* \* \* \* \*

. . .

(3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—

(A) such child is neither the legitimate nor adopted child of such individual. . . .

For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual.

\* \* \* \* \* \*

(9) If an individual entitled to old-age insurance benefits . . . adopts a child after such individual becomes entitled to such benefits, such child shall be deemed not to meet the requirements of clause (i) of paragraph (1)(C) of this subsection unless such child—

(B) was legally adopted by such individual before the end of the 24-month period beginning with the month after the month in which such individual became entitled to

---

2. Recently the United States Court of Appeals for the Eighth Circuit enunciated the standard that the hearing examiner must "*fully* and *fairly* develop the facts." (Emphasis in the original.) Sellars v. Secretary, Dept. of H.E.W. (C.A. 8) 458 F.2d 984, page 986. The *Sellars* standard appears to be an articulation and application of the first, second, fourth and seventh standards of review, set out above.

old-age insurance benefits, but only if—

(i) such child had been receiving at least one-half of his support from such individual for the year before such individual filed his application for old-age insurance benefits or, if such individual had a period of disability which continued until he had become entitled to old-age insurance benefits, for the year before such period of disability began, and

(ii) either proceedings for such adoption of the child had been instituted by such individual in or before the month in which the individual filed his application for old-age insurance benefits or such adopted child was living with such individual in such month."

The definition of the word "child" as used in Section (d)(1), *supra,* is found in Section 416(e), Title 42, U.S.C., which states the following in part:

"The term 'child' means (1) the child or legally adopted child of an individual, . . . ."

Section 416(h)(2)(A), *supra* [incorporated by reference in § 402 by paragraph (3) of subsection (d)(1)] further defines the meaning of "child" as follows:

"In determining whether an applicant is the child or parent of a[n] . . . individual . . ., the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application. . . . Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

▮▮▮ "Under Section 416(h)(2)(A), one who is not actually the child of a wage earner will nevertheless occupy that status for purposes of the [Social Security] Act if intestate personal property of the wage earner would devolve upon him under the applicable state law. . . . ." The applicable state law is Missouri state law in this instance, because the agreement to adopt was made in Missouri and Willis Stanley and his wife were domiciled in Missouri when Willis Stanley filed his application for old-age benefits. On adoption issues state law, not inconsistent with federal standards, governs. Craig v. Finch (C. A.5), 425 F.2d 1005, 1007.

## THE PLAINTIFF CHILD WAS EQUITABLY ADOPTED UNDER MISSOURI LAW

▮▮▮ Missouri law is exceptional for its very liberal "equitable adoption" doctrine. In Missouri it is well settled law that "the present and prior statutory enactments, however, did not oust a court of equity of jurisdiction to decree an [earlier] adoption in a proper case, where the facts warrant it, although the statutory methods of adoption were not complied with." Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412, 416, certiorari denied, 338 U.S. 949, 70 S.Ct. 488, 94 L. Ed. 585; Drake v. Drake, 328 Mo. 966, 43 S.W.2d 556. A Missouri court of equity will decree adoption to protect the interest of a child when the adoptive parent "has expressly agreed to adopt such child, or by his acts and conduct has placed himself in a position where it would be inequitable to permit it to be asserted that the child was not adopted. . . ." Hogane v. Ottersbach (Mo.), 269 S.W.2d 9, 11. However, one who seeks to establish an oral contract or equitable adoption by estoppel must produce clear, cogent and convincing evidence so "as to leave no reasonable doubt in the chancellor's mind." *Id.* at 11. The agreement may be found indirectly by circumstances and by inferences from the statements and conduct of the adopting parents. Drake v. Drake, *supra.* In Long v. Willey, Mo., 391 S.W.2d 301 at page 304, the reason for the rule is enunciated as follows:

"Where such contract is actually made and is based upon a good consideration and where it is fully performed

by the person to be adopted but is not performed by the promisor during his lifetime, a court of equity will declare specific performance against the adoptor's estate to the extent at least of making the adoptee an heir."

The hearing examiner in the case at bar expressly and properly found that there was an equitable adoption and that this equitable adoption took place in the fall of 1963. The hearing examiner's conclusion is correct. Under Missouri law, the equitable adoption occurred in September 1963. The evidence, when considered together with the permissible inferences is clear, cogent and convincing that in September 1963 Willis and Dora Stanley wanted to adopt their grandson, William D. Stanley, and that they expressed the desire to obtain custody of William, then one year of age, with the intention and purpose of keeping William in their home and raising him as their son if the mother, as well as the father consented. Harold Dexter Stanley, the father, had already delivered his son to the grandparents in June 1963 with the expressly stated purpose of securing adoption by the grandparents. The direct and uncontroverted testimony of the grandmother and the father is that Florence K. Stanley, the mother of William, orally consented to the adoption of William in the fall of 1963 while she stayed in the plaintiff's home for a week or more. The only permissible conclusion in light of this clear, cogent, uncontradicted and convincing evidence received by the hearing examiner is that the mother, Florence K. Stanley, did consent. She was told of the desires and intent of the grandparents and, according to the uncontroverted testimony of the father and grandmother, she then orally consented. There is no substantial evidence to the contrary. When Florence and Harold signed an affidavit on December 6, 1966, which consented to the formal adoption of William by the grandparents, this appears clearly to have been a written ratification of the earlier oral consent to the equitable adoption. The only possi-

ble evidence to the contrary is an undated and unsigned letter addressed to the grandmother and apparently written by the mother wherein she makes equivocal statements respecting the adoption. However, she finishes the letter by stating the following:

"but (sic) I can tell you this also, that I love him too much to upset his life anymore by taking him from you. and (sic) I also think too much of you and willis (sic) to tear up your lives anymore either (sic)" (Tr. 92.)

The reasonable inference from this concluding statement is that she, at the very least, confirmed her earlier consent to the equitable adoption by the grandparents. This is corroborated by the fact that, in the following years she did not communicate with her son nor attempt to see him.

Because of the foregoing evidence it is therefore found that William Stanley was equitably adopted by the paternal grandparents, Willis and Dora Stanley, in the fall of 1963.

## THE DATE THE ADOPTIVE PARENT BECAME ENTITLED TO OLD-AGE BENEFITS

The Appeals Council found that there was no unfulfilled contract to adopt the child before or at the time when the wage earner became entitled to old-age insurance benefits. As stated above, the wage earner filed application for old-age benefits February 5, 1963, and was found to be entitled to old-age insurance benefits from January 1, 1963, and thereafter. The date that the wage earner became entitled to old-age insurance benefits was either January 1, 1963, or February 5, 1963. The Appeals Council fixed the time at February 5, 1963. Whether the date of entitlement was February 5, 1963, or January 1, 1963, is immaterial in this case since William was equitably adopted in the fall of 1963. So it is true that William was not equitably adopted before or at the time when the wage earner became entitled to old-age benefits.

CALCULATION OF THE STATUTORY TWO YEAR PERIOD WITHIN WHICH ADOPTION MUST HAVE OCCURRED UNDER § 402(d)(9)(B), TITLE 42, U.S.C.

The applicable statute, Section 402(d)(9)(B), however, states that the child shall not be deemed to be a dependent of the wage earner unless the child was legally adopted by the wage earner *within two years after* the wage earner became entitled to old-age benefits beginning with the month after the month in which the wage earner became entitled to old-age benefits or prior to August 1966.[3]

THE ISSUE OF WHETHER EQUITABLE ADOPTION UNDER MISSOURI LAW QUALIFIES A MINOR CHILD AS A "LEGALLY ADOPTED" CHILD UNDER SECTION 402(d)(9)(B), TITLE 42, U.S.C.

Clearly, the child, William, was equitably adopted well within the time limits of Section 402(d)(9)(B) as found by this Court and also by the hearing examiner. The problem, of course, is whether the words "legally adopted" also encompass an equitable adoption under Missouri law within the statutory meaning of "legally adopted" as used in Section 402(d)(9)(B), *supra.* If the equitable adoption constitutes legal adoption within the meaning of Section 402(d)(9)(B), *supra,* then William qualifies as a "dependent" and is entitled to child benefits.

In order correctly and properly to construe this statute, it is necessary to ascertain the intent of Congress. Cf. United States v. Bowman (C.A.3), 358 F.2d 421; City of Newark v. United States (C.A.3), 254 F.2d 93.

■ First, on the question of Congressional intent, it is noted that within the language of the statute itself, Section 402(d)(1), the phrase "[e]very child" is defined by Section 416(e), *supra,* and "legally adopted" as there used is not limited to a formal proceeding. In fact, Section 416(h)(2)(A) includes any child upon whom intestate personal property would devolve under the applicable state law. As noted above the doctrine of equitable adoption has been recognized repeatedly by Missouri courts as affording full protection to the rights of the equitably adopted child in succession to the estate of the adoptive parent. See Comment, Equitable Adoption in Missouri, 20 Mo.L.Rev. 199, 210.

■ The legislative history to Section 402(d)(9)(B) shows that Congress intentionally made those provisions concerning adoptions by retired workers very strict with the purpose of preventing abuse of the Social Security Act by people who would otherwise adopt children solely to qualify them for benefits.[4]

---

3. Since Willis Stanley became entitled to his old-age benefits at least as early as February 5, 1963, William would, under the language of Section 402(d)(9)(B), *supra,* have to have been legally adopted by March 1965 in order to receive benefits for himself. ". . . However, Congress installed a grace period into this provision making the two year limitation inapplicable to any child adopted prior to August, 1966. Section 323(b), P.L. 89–97 (July 30, 1965). Thus, by virtue of this grace period, although [Willis Stanley] first became entitled to old-age benefits in [1963], [William] was required only to demonstrate that he was legally adopted sometime prior to August, 1966." Craig v. Finch (C.A.5), 425 F.2d 1005, footnote 6 at page 1008. (Words and figures in brackets added.)

4. See Sen.Rep. No. 404, 89th Congress, 1st Sess. (1965); 1 U.S.Code & Ad.News, p. 2048:
 "The committee believes that the provisions concerning adoptions by retired workers should be made comparable to those relating to adoptions in other cases so as to provide safeguards against abuse through adoption of children solely to qualify them for benefits, and has included in the bill a provision that would accomplish this result. Under this provision benefits would be payable to a child who is adopted by an old-age insurance beneficiary after the latter becomes entitled to benefits only if the following conditions are met:
 (1) At the time the worker became entitled to benefits the child was living

From the analysis of the evidence as presented to the hearing examiner and the Appeals Council it does not appear that any possible inference can be drawn that Mr. and Mrs. Willis Stanley adopted William solely to qualify him for child insurance benefits. Therefore, as an aid to the achievement of the Congressional purpose and objective of the Social Security Act, Section 402 (d)(9)(B) will be liberally construed so that narrow technical views will not be employed to impede or prevent the accomplishment of the legislative intent that children otherwise qualified, such as William, receive child insurance benefits when the evidence clearly shows that the adoptive parents did not adopt the child after the wage earner became entitled to old-age benefits solely to qualify the child for child insurance benefits. Schroeder v. Hobby (C.A.10), 222 F.2d 713, 715.

Further, some courts have held that the term "legally adopted" as used in Section 402(d)(9)(B), *supra*, does include an equitable adoption complying with state law. See Anno., 10 A.L.R. Fed. 903, 911, and cases cited therein.

For example, in Crozier v. Cohen (W. D.Okl.), 299 F.Supp. 563, the issue was substantially the same as in this case, namely whether there was an effective adoption of the child before the expiration of the 24 months specified in Section 402(d)(1)(B) after the wage earner first applied for old-age benefits. While the District Court in the *Crozier* case held that the child was not shown to have been adopted, under the equitable adoption theory before the end of the 24-month period beginning with the month after the month in which claimant became entitled to old-age insurance benefits, as required by statute, and thus the child was properly denied such benefits, nevertheless, " . . . the court indicated that an equitable

adoption consisting under state law of a binding contract to adopt, would suffice as a legal adoption of an after-adopted child, entitling the child to benefits, if the equitable adoption occurred within the 24-month period." Anno., 10 A.L.R. Fed. at 911; Crozier v. Cohen, *supra*. See also Davis v. Celebrezze (D.C.W. Va.), 239 F.Supp. 608. *Contra,* Craig v. Finch (C.A.5), *supra*.

Although the Court in Craig v. Finch, *supra*, very strictly interpreted the term "legally adopted" in section 402(d)(9)(B) to require formal, statutorily-authorized proceedings completed within the required period, this holding was challenged in Glaze v. Richardson (CA5 1971), 438 F.2d 120, in which the Fifth Circuit Court of Appeals (in a case heard by a panel entirely different from the Craig panel) indicated that it had "some difficulty" with the conclusion of Craig that an equitable adoption would be insufficient to entitle an after-adopted child to benefits. The court did not determine the issue, however, since under the facts it found that there was neither a legal nor an equitable adoption. Anno., 10 A.L.R. Fed. at 910–911.

The decision in Craig v. Finch, *supra*, is distinguishable from the case at bar in that the case law of Missouri with respect to the rights of adopted children under the doctrine of equitable adoption is unusually liberal and very broad unlike the stricter Texas law which was applicable in the *Craig* case.

See Comment, Equitable Adoption In Missouri, 20 Mo.L.Rev. 199. "In Missouri, and in this jurisdiction only, it is held that a fully executed contract of adoption on the part of the child, although the statutory procedure was not followed . . . operates to change the status of the child, so that it may take as an heir." 2 C.J.S. Adoption of Children § 27, page 401 (1936) (foot-

with the worker or adoption proceedings had begun;

(2) The adoption was completed within 2 years of the time when the worker became entitled to benefits; and

(3) The child had been receiving at least one-half of his support from the worker for the entire year before the worker became entitled to old-age insurance benefits. . . ."

note wherein reference is made to Lindsley v. Patterson (Mo.Sup.Ct.), 177 S. W. 826, 831). It is significant that the Missouri cases are liberally cited in C.J. S., *supra,* to support the strong unique Missouri rule. Therefore, it is found that the equitable adoption of William Stanley by the wage earner, Willis Stanley, constitutes a legal adoption within the meaning of Section 402(d)(9)(B), *supra,* and that the Appeals Council did not apply the correct legal standards in determining this issue.

## DEPENDENCY QUESTION

Assuming the equitable adoption in 1963 and that such adoption satisfied the adoption requirements, the child is entitled to child insurance benefits if he meets the requirements of subsection (d)(1) of § 402 that he

(A) had filed application for child's insurance benefits,

(B) at the time of such application "was unmarried and (i) had not attained the age of 18. . . ."

(C) "was dependent upon such individual" (Willis Stanley the adopting grandfather),

(i) "if such individual is living" at the time the application "(for child's insurance benefits) was filed." (namely on October 22, 1968).

The fact that the child was dependent on Willis Stanley in 1968 at the time (and prior thereto) the application for child's insurance benefits was filed, is uncontroverted and appears from the record.

In subparagraph (3) subsection (d)(1) § 402, it is further provided that a child "shall be deemed dependent upon his . . . adopting father . . . at the time specified in paragraph (1)(C)" of subsection (d)(1) § 402 (October 22, 1968, the time the application

for child's insurance benefits was filed) unless at such time such individual (here adoptive father) was not living with or contributing to the support of such child and such child is neither the legitimate nor adopted child of the individual (here the adoptive father). Clearly such individual (here adoptive father) was living with and contributing to the support of the equitably adopted child when the application for child's insurance benefits was filed. So up to this point actual and statutorily presumed dependency of the child appears from this record.[5]

The difficulty concerning the determination of dependency of the equitably adopted child arises under paragraph (9) of subsection (d)(1) of § 402. That paragraph reads as follows:

"(9) If an individual entitled to old-age insurance benefits (but not an individual included under paragraph (8) of this subsection) adopts a child after such individual becomes entitled to such benefits, such child shall be deemed not to meet the requirements of clause (i) of paragraph (1)(C) of this subsection unless such child—

(A) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or

(B) was legally adopted by such individual before the end of the 24-month period beginning with the month after the month in which such individual became entitled to old-age insurance benefits, but only if—

(i) such child had been receiving at least one-half of his support from such individual for the year before such individual filed his application for old-age insurance benefits or, if such individual had a period of disability which continued until he had become entitled to old-age insurance

---

5. In subparagraph (3) of subsection (d) .(1) the above quoted provisions of § 416 (h)(2)(A) are incorporated by reference. Thus a Missouri equitable adoption qualifies the child of the adoptive grandfather because the equitably adopted child would take as an heir in the devolution of intestate personal property.

benefits, for the year before such period of disability began, and

(ii) either proceedings for such adoption of the child had been instituted by such individual in or before the month in which the individual filed his application for old-age insurance benefits or such adopted child was living with such individual in such month."

Obviously the child in this case cannot qualify under the terms of (9)(A) quoted above because he is neither the natural child ·or stepchild of "such individual," his grandfather.

In respect to (9)(B) quoted above he qualifies under the first paragraph because in Missouri equitable adoption is the equivalent of legal adoption, as shown above, and because his equitable adoption occurred well within the 24 months following the individual's (grandfather's) entitlement to old-age benefits. It is in respect to subparagraphs (i) and (ii) of paragraph (9)(B) that the defendant contends that a material deficiency in the child's case appears.

If these requirements of subparagraphs (i) and (ii) (and regulations pursuant thereto, 20 C.F.R. 404.323) are applicable and constitutional the action of the ·defendant Secretary in denying the child's insurance benefits must be affirmed. For the requirements of clause (i) of paragraph (1)(C) of subsection (d)(1) are the requirements of dependency.

 While the requirements of subparagraphs (i) and (ii) of paragraph (9) above would, if valid, disqualify the minor child in this case, it is concluded that, as applied in this case, said subparagraphs (i) and (ii) violate the standards of the equal protection of the law embodied in the due process clause of the Fifth Amendment.

 While ·the Fifth Amendment contains no ·specific equal protection clause, equal protection standards have been found to be present in the due process clause of the Fifth Amendment if the federal statute manifested a "patently arbitrary classification, utterly lacking in rational justification."[6] Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435, 1445; Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884; Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231.

The United States Supreme Court in Richardson v. Belcher, *supra,* citing with approval its earlier decision in Flemming v. Nestor, *supra,* stated:

"We have held that '[t]he interest of. a covered employee under the [Social Security] Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause.' " 404 U.S. at 81, 92 S.Ct. at 257, 30 L.Ed. at 234.

In the case at bar there is no permissible rational distinction between a natural son who may be illegitimate and a stepson who may not even be a blood relation on one hand and an adopted grandchild on the other hand. This is an arbitrary classification inconsistent with the purpose of the Social Security Act and a violation of the equal protection standards of the due process clause of the Fifth Amendment. Flemming v. Nestor, *supra;* Bolling v. Sharpe, *supra;* Richardson v. Belcher, *supra.*

In the area of state regulations and statutes affecting the rights of illegitimate children the United States Supreme Court in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768, held, among other things, that Louisiana's denial of recovery by dependent illegitimate acknowledged children of Workmen's Compensation benefits violated the equal protec-

---

6. This rule was recently enunciated again by Mr. Justice Douglas and Mr. Justice Brennan in their dissenting opinion in the case of United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626.

tion clause of the Fourteenth Amendment because the statutory classification bore no rational relationship to any legitimate state interest, compelling or otherwise. Mr. Justice Powell, who delivered the opinion of the Court in *Weber*, concluded as follows:

" . . . Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where —as in this case—the classification is justified by no legitimate state interest. . . ."

Thus under the same standards it would be violative of the principles of Equal Protection Clause to apply the requirements of subparagraphs (i) and (ii) of paragraph (9) above so as to disqualify the minor legitimate grandchild in this case who is otherwise qualified to receive child insurance benefits.

■ In order to fulfill the intent of Congress that a child properly adopted within the required twenty-four months' period after the wage earner became entitled to old-age insurance benefits should receive the insurance benefits where he is otherwise qualified, and when it has been found that there was no intent to adopt the child solely to qualify him for benefits, the child in this case is entitled to the claimed benefits.

For the foregoing reasons, defendant's motion for summary judgment will be denied and the decision of the Appeals Council will be reversed.

It is therefore

Adjudged and ordered that the motion of defendant Secretary of Health, Education and Welfare for summary judgment be, and it is hereby, denied. It is further

Adjudged and ordered that the final decision of the defendant Secretary of Health, Education and Welfare be, and it is hereby, reversed. It is further

Adjudged and ordered that plaintiff's application for child insurance benefits on behalf of her adopted son, William, be, and it is hereby, granted, and the defendant required to make payment thereof in a manner consistent with the conclusions of law herein.