## No. 26395

Emilia Chavez, individually and as next friend of David Chavez, a minor v. Con F. Shea, Executive Director of the Colorado State Department of Social Services; The Colorado Department of Social Services; and The Colorado State Board of Social Services

(525 P.2d 1148)

Decided July 29, 1974.          Rehearing denied September 16, 1974.

John Kuenhold, Jerry L. Bean, Jon A. Nicholls, for plaintiff-appellants.

John P. Moore, Attorney General, John E. Bush, Deputy, Douglas D. Doane, Special Assistant, Thomas Frank, Special Assistant, for defendants-appellees.

MR. JUSTICE HODGES delivered the opinion of the Court.

Appellant's application for financial assistance under Colorado's Aid for Families with Dependent Children (AFDC) was denied by the Saguache County Department of Social Services. The appellant, Emilia Chavez, who is not related to the child and had never complied with the statutory procedures for adoption, sought assistance on the basis that she had equitably or culturally adopted the child. The assistance was denied on the ground that the aid was available only to specified relatives including statutorily adoptive parents. The State Department of Social Services after a hearing affirmed the action of the county department. The district court affirmed. On appeal from the judgment of that court, we likewise affirm.

Under the AFDC program established by the Social Security Act of 1935, funds are made available for a "dependent child" by the Federal Government, on a matching fund basis, with the participating state administering the program in conformity with the Act and regulations of the Department of Health, Education, and Welfare. (HEW)

The federal AFDC statute provides that aid may be given for a dependent child, (with certain qualifications not pertinent here), who is living with one of the listed relatives. 42 U.S.C. § 606(a). Appellant argues that she falls within that list of eligible relatives.

We note that 42 U.S.C. § 606(a) does not list "adoptive parent" as a specified relative. Among others, it mentions

"father" and "mother." However, HEW[8] has promulgated a rule which states that a child may be considered living with one of the relatives specified in the Act if his home is with "persons who legally adopt a child. . . ." 45 C.F.R. § 233.90(C)(v)(3). That regulation does not further define "legally adopt" but states that the term is to be defined "in accordance with state law." The appellants in their reply brief suggest that the definition of adoptive parent must come from Colorado law.

In implementing the federal act, the General Assembly of Colorado enacted 1971 Perm. Supp., C.R.S. 1963, 119-9-1(4)(b). This statute provides that a specified relative includes an "adoptive mother." Rule 4233.1 Vol. IV, Colorado manual of Public Assistance uses the term "adoptive mother" without further definition.

We note that the General Assembly has supplanted 1971 Perm. Supp., C.R.S. 1963, 119-9-1(4)(b) with a new provision. *See* Colo. Sess. Laws 1973, ch. 340, 119-3-3(5)(b) at 1178. The effective date of this provision was July 1, 1973 which was after the application in this case on February 19, 1973. Although the parties argued the case on the basis of the later statute, the two statutes are identical with reference to the provisions pertinent to this case.

I.

■■■ The appellant argues that under the laws of Colorado, a person may become an adoptive parent by (1) statutory adoption pursuant to the Colorado's Children's Code, (2) cultural adoption, (3) equitable adoption, and (4) adoption under the doctrine of *in loco parentis.* We hold that, except in a very limited and unique situation discussed later, the only method of legal adoption under the laws of Colorado is pursuant to the Children's Code.

■ Appellant maintains that she culturally adopted David under the Spanish custom of "crianza." Although we accept the testimony that she considered herself morally bound to raise David in the same way as her son, the fact remains that David was never adopted pursuant to the Children's Code.

Appellant has cited no Colorado case in which this court has recognized cultural adoption as being a legal adoption.

Appellant further contends that under the laws of Colorado, a person may legally adopt a child under the doctrine of equitable adoption. In *Barlow v. Barlow,* 170 Colo. 465, 463 P.2d 305 (1969), we held that where there was "an oral contract to adopt a child, fully performed except that there was no statutory adoption," the child could be held equitably adopted for purposes of intestacy. The holding was further limited to the laws in effect prior to the passage of the Children's Code.

We declined to extend this doctrine of equitable adoption in *First National Bank of Denver v. People,* 183 Colo. 320, 516 P.2d 639 (1973). This court has never applied the doctrine to factual situations other than those involving succession to an estate.

This case is clearly distinguishable from *Stanley v. Secretary of Health, Education, and Welfare,* 356 F. Supp. 793 (W.D. Mo. 1973). In *Stanley,* the court found that under the laws of Missouri, the child was equitably adopted for purposes of receiving OASDI benefits. The court therein specifically noted that "Missouri law is exceptional for its very liberal 'equitable adoption' doctrine."

Appellant further argues that under Colorado law, a person who stands *in loco parentis* is an "adoptive parent." Appellant cites no Colorado state court cases. *Leyerly v. United States,* 162 F.2d 79 (10th Cir. 1947) does not apply Colorado law but involves a federal act which specifically provides insurance benefits to "persons who have stood in loco parentis . . ." 38 U.S.C. § 801(f). None of the statutes or rules involved in this case mention the term *in loco parentis.* Furthermore, the cases cited by the appellant from other jurisdictions concern insurance benefits payable to beneficiaries who have stood *in loco parentis* to the insured.

We conclude, therefore, that under Colorado law, the only method of legal adoption, except in the very limited situation, already discussed, is through the Children's Code.

II.

Appellant next argues that the state is imposing a burden

on applicants not required by the federal statute by requiring an "adoptive parent" to fulfill the statutory requirements of adoption. In *Arizona Department of Public Welfare v. Department of Health, Education, and Welfare,* 449 F.2d 456 (9th Cir. 1971), it was held that under the supremacy clause, Arizona's requirement that a specified relative other than the parent obtain a court order of custody of the child prior to receiving aid, was invalid. That court read 42 U.S.C. § 606(a) to require aid to be given to an otherwise qualified uncle, for example, without the requirement of a court order.

In our view, the *Arizona Department of Public Welfare* case is clearly distinguishable from the fact situation here and thus, is not persuasive in support of the appellant's argument. As discussed above, Colorado law requires statutory procedures prior to legal adoption. The federal rules discussed above defer to state law to determine an adoptive parent.

### III.

Appellant asserts that if we hold that Colorado law does not recognize cultural, equitable or *in loco parentis* as legal adoption, then she is denied equal protection of the laws. Specifically, she argues that such an interpretation as applied to her, and others similarly situated, creates two classes of needy dependent children indistinguishable from each other except that one class is composed of needy children raised by a natural parent, statutorily adoptive parents or other specified relatives; and the other class consists of needy children raised by persons standing *in loco parentis* to the child.

Appellant further argues that the classification is based on race. In cases where the classes are drawn on ethnic or racial grounds, the United States Supreme Court has required that the classification be supported by a compelling state interest. *Toyosaburo Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944) and *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

The classification here is not based on race. The courts of Colorado are open to appellant and anyone else who wishes to institute adoption proceedings. The burden of

statutory adoption is the same on all citizens. Thus, the test is whether the classification bears a reasonable relationship to a legitimate government interest.

Appellant argues that this case is indistinguishable from *United States Department of Agriculture v. Moreno,* 413 U.S. 538, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). There, the United States Supreme Court found that the Food Stamp Act "creates two classes of persons for food stamp purposes: one class is composed of those individuals who live in households all of whose members are related to one another, and the second class consists of those individuals who live in households containing one or more members who are unrelated to the rest." The court held that denying food stamps to the latter class served no legitimate governmental interest and was therefore an unconstitutional classification. By analogy, the appellant argues here that she is denied assistance solely because she is not related to the dependent child.

*Moreno,* however, is clearly distinguishable in our view. In *Moreno,* a household which would otherwise be eligible for food stamps was denied that assistance solely because an unrelated person was living in the household. This denial was in accordance with a recently adopted amendment to the Food Stamp Act. The United States Supreme Court noted that: "The legislative history that does exist, however, indicates that that amendment was intended to prevent so-called 'hippies' and 'hippie communes' from participating in the food stamp program ... The challenged classification clearly cannot be sustained by reference to this congressional purpose."

In the instant case, however, a cut-off line is drawn after listing parents, uncles, adoptive parents and other specified relatives. There is a legitimate governmental reason for drawing the line at this point. Administratively, it is reasonably easy to determine whether the applicant for AFDC is the parent, uncle, adoptive parent or other specified relative of the dependent child. To extend payments further would require individual case determinations as to whether

the applicant had assumed, temporarily or permanently, some or all of the responsibilities of raising the child. Furthermore, such determinations would have to be in accordance with a set of standards which would assure uniformity in defining eligibility.

By denying assistance to households containing an unrelated person in *Moreno,* Congress complicated rather than simplified the administration of the program. Under that act, after it was determined that those making up a household were eligible for assistance, the department was further required to determine whether any unrelated persons were part of the household.

The AFDC program in the instant case operates from the opposite direction. Here, the applicant receives assistance if he is one of the specified relatives. Since we start with the assumption that AFDC assistance cannot be given to every applicant who in some manner or to some degree assumes some responsibility for a dependent child, a cut-off line must be drawn somewhere.

In *Moreno,* Congress defined those eligible for food stamp benefits and then created an exception to otherwise qualified households which burdened the administration of the program. Here, to extend payments beyond the line drawn at the specified relatives would greatly complicate the administration of the AFDC program and place a larger percentage of the welfare dollar into administration, thus diminishing the real benefits which the program is designed to provide.

We hold that the line drawn in this case adequately satisfies the guidelines announced in *Moreno* where the United States Supreme Court stated:

"Under 'traditional' equal protection analysis, a legislative classification must be sustained if the classification itself is rationally related to legitimate governmental interest."

That court further stated:

" 'Traditional' equal protection analysis does not require that every classification be drawn with precise 'mathematical nicety.' "

*Williams v. Wohlgemuth,* 366 F. Supp. 541 (D.C. W. Pa.

1973), *aff'd without opinion, Wohlgemuth v. Williams,* 416 U.S. 901, 94 S.Ct. 1604, 40 L.Ed.2d 106 (1974), also strongly relied upon by the appellant, is clearly distinguishable and therefore not persuasive.

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE KELLEY and MR. JUSTICE GROVES dissent.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent.

In my opinion, the provision of 42 U.S.C. § 606 which allows payments only where the otherwise qualified child resides with a designated relative or State appointed foster parent creates an impermissible class distinction which under the circumstances of this case is violative of the Equal Protection Clause of the Fourteenth Amendment.

Under the provisions of Colorado Public Assistance Act, Colo. Sess. Laws 1973, Ch. 340, 119-3-1 *et seq.,* assistance payments are made available to families with a dependent child if the child resides with an eligible relative or if he resides in a foster home as a result of a judicial determination that continued residence in the home of the parent or relative would be contrary to the best interests of the child. Needy families which have otherwise assumed the burdens of caring for a dependent child are not eligible for assistance under this act.

The appellants are members of this excluded class and challenge its constitutionality here. For a legislative classification to withstand scrutiny under the Equal Protection Clause, it "must be rationally related to a legitimate government interest." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed. 782.

In my view, clearly the underlying purpose of the legislation is to provide assistance to needy children. Nevertheless, one class of needy children is omitted. Apparently, the rationale for the challenged exclusion is the presumption that assistance to the excluded class of families who provide a home for the otherwise dependent child will not benefit the

child in the same manner as payments to those families who have a legal obligation of support or who are related to the child.

The appellants have alleged that their feeling of responsibility arises under the Spanish custom of *crianza.* To conclusively presume that the child under their care will not benefit from the payments as much as if the child were living with a blood relative — for example, a first cousin — "is not only 'imprecise'; it is wholly without rational basis" and "is invidious." *United States Department of Agriculture v. Moreno, supra,* at 93 S.Ct. 2827; *Williams v. Wohlgemuth,* 366 F. Supp. 541 (D.C. W. Pa. 1973), *aff'd without opinion, Wohlgemuth v. Williams,* 416 U.S. 901, 94 S.Ct. 1604, 40 L.Ed.2d 106 (1974).

The majority opinion suggests the rationality lies in expediency in that without this blood related limitation, the board would be forced to hold a hearing in each case to ascertain whether the applicant had assumed the responsibilities of raising a child. I refuse to believe the constitutionality lies in expediency. Moreover, I see no great burden in holding a hearing to determine the nature of the financial obligation which the family, with whom the dependent child lives, has undertaken. Fraud can be controlled as provided by statute regardless of with whom the child resided. Colo. Sess. Laws, Ch. 340, 119-3-30.

For these reasons, I would hold the eligibility requirement based on with whom the child resides to be invalid under the Equal Protection Clause.

MR. JUSTICE KELLEY authorizes me to say that he joins in this dissent.

MR. JUSTICE GROVES dissenting:

I reluctantly dissent. I like the majority opinion here and the dissent in *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). I am unable, however, to distinguish the situation here with that in *Moreno* and feel that this decision forces me to say that here too there is a violation of equal protection.