429 F.2d 807
 The COMMITTEE TO FREE THE FORT DIX 38, Saul Schapiro, Grace Paley, William Boyd and Robin Boyd, Individually and on behalf of those Persons and Organizations Similarly Situated, Appellants,
v.
Major General Kenneth COLLINS, as Commanding Officer of the United States Army Training Center at Fort Dix, and Lt. Col. R. D. Medaugh, as Administrative Officer of the Adjutant General Corps at Fort Dix.
 No. 18231.
 United States Court of Appeals, Third Circuit.
 Argued June 16, 1970.
 Decided July 13, 1970.
 
 Frank Askin, Newark, N. J., for appellants.
 D. William Subin, Asst. U. S. Atty. (Frederick B. Lacey, U. S. Atty., Newark, N. J., on the brief), for appellees.
 Before McLAUGHLIN, STALEY and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 The vexing problem of the power of civilian courts to review decisions of a military commander concerning actions of civilians within an area under his command has become ever more acute since the historic decision in Ex Parte Milligan, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866). The present case raises the issue whether a United States District Court has jurisdiction to review the denial by a military commander of a request by civilians to demonstrate on post property which is under the authority of the commander. A closely related issue is whether such denial raises a justiciable controversy. Also presented is the question of when such a case becomes moot.
 
 
 2
 Since this case comes to us as a result of a dismissal of the complaint, we assume for purposes of review that the following facts alleged in the complaint and accompanying affidavits are true.
 
 
 3
 Appellants organized to protest stockade conditions at Fort Dix and the treatment of a group of 38 prisoners known as the "Fort Dix 38." They first planned a demonstration at Fort Dix for September 28, 1969, but postponed the demonstration until October 12, 1969. Upon conferring with a representative of the Adjutant General of Fort Dix, the appellants were told to submit a written request for permission to enter the military base to conduct their proposed protest. Appellants planned to demonstrate at Fort Dix on highways which, while under the authority of the base commander, are used by the public as open roads. Persons using these highways do not ordinarily encounter either guards or checkpoints. The reply from appellee Lt. Col. R. D. Medaugh, Adjutant General at Fort Dix, with respect to the September 28th proposal crossed in the mails the appellants' request for postponement of the demonstration until October 12th. The reply, however, was the same in both cases: no demonstration would be permitted because "such a demonstration would interfere with the orderly accomplishment of the mission of Fort Dix."
 
 
 4
 Appellants then filed a complaint on October 9, 1969, in the District Court for New Jersey seeking injunctive relief against enforcement of the military commander's orders as they pertained to the use of the military post on October 12, 1969. Appellants also sought a declaratory judgment declaring pertinent Fort Dix regulations and the above decision of the adjutant general's office unconstitutional. Finally, the appellants sought a temporary restraining order to forbid the commander of Fort Dix from excluding the appellants from the military base on October 12, 1969.
 
 
 5
 In the District Court, Judge Reynier J. Wortendyke, Jr., denied the application for a temporary restraining order and dismissed sua sponte the complaint for lack of jurisdiction and for lack of a justiciable controversy. Appellants immediately applied to this Court for a temporary restraining order against the base commander's order denying appellants permission to enter the base on October 12, 1969. After oral argument on October 10, 1969, the application for such order was denied.
 
 
 6
 Admittedly, the authority of a military commander over his post, as conferred on him by statute and regulations,[1] is broad. Judicial review of an exercise of that authority must necessarily be limited.
 
 
 7
 We are not here asked to review an exercise of the commander's discretion per se, but rather to consider whether it is the proper function of the judiciary, and whether subject matter jurisdiction lies, to decide at what point the Constitution sets forth boundaries to that discretion. Preliminarily, we may note that the issue presented in this case would appear to be within the "arising under" jurisdiction of the federal district courts as specified in 28 U.S.C. § 1331(a).[2] See e. g. Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 379, 5 L.Ed. 257 (1821); Powell v. McCormack, 395 U.S. 486, 514, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). But as the Supreme Court in Powell stated (p. 515, 89 S.Ct. at p. 1961), "the grant of jurisdiction in § 1331(a), while made in the language used in Art. III [of the Constitution], is not in all respects co-extensive with the potential for federal jurisdiction found in Art. III." We must, therefore, consider whether other authority has circumscribed our power under § 1331 (a) to review decisions of military commanders respecting bases under their command vis a vis civilians.
 
 
 8
 The most direct authority on this question is Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In that case, a civilian employee of a restaurant operated on the premises of the Naval Gun Factory was barred from military property without a hearing, and thereby from civilian employment on the base, by the military commander on the ground that the employee failed to meet the security requirements of the installation. While the Supreme Court upheld summary judgment for the government, there was no intimation that the district court lacked jurisdiction to hear the matter. On the contrary, Mr. Justice Stewart, speaking for the majority stated at p. 898, 81 S.Ct. at p. 1750:
 
 
 9
 "We may assume that [Appellant] could not constitutionally have been excluded from the Gun Factory if the announced grounds for her exclusion had been patently arbitrary or discriminatory — that she could not have been kept out because she was a Democrat or a Methodist."
 
 
 10
 This statement assumes that jurisdiction exists in order to determine whether the commander's decision is "arbitrary or discriminatory." Such view is bolstered by Mr. Justice Brennan's dissent in Cafeteria Workers where he stated at pages 899-900, 81 S.Ct. at page 1751 what he understood the majority to be holding:
 
 
 11
 "I read the Court's opinion to acknowledge that petitioner's status as an employee at the Gun Factory was an interest of sufficient definiteness to be protected by the Federal Constitution from some kinds of governmental injury. * * * In other words, if petitioner['s] * * * badge had been lifted avowedly on grounds of her race, religion, or political opinions, the Court would concede that some constitutionally protected interest — whether `liberty' or `property' it is unnecessary to state — had been injured."
 
 
 12
 Many cases have recognized the First Amendment protection surrounding public picketing, e.g. Bachellar v. Maryland, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970); Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Amalgamated Food Employees Union Local 560 v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Equally important, the same cases have enunciated important limitations on the right to picket. While we need not here decide what those limitations are when "public" areas of a military reservation are involved, we do note that the power of a commander to exclude civilians from his base is very broad. SeeCafeteria Workers, supra. The recent case of Kiiskila v. Nichols, No. 17,580 (7th Cir., Feb. 4, 1970) rev'd on rehearing en banc (Aug. 3, 1970) is in accord with this view. There a civilian employee at Fort Sheridan was excluded from the base because the commander feared the impact of her distribution of certain literature on the performance of his duty to prepare soldiers for service in Vietnam. In deciding the merits of the case in favor of the employee, the court there assumed it has jurisdiction over the subject matter.
 
 
 13
 The related question of justiciability has two parts. "First, we must decide whether the claim presented and the relief sought are of the type which admit of judicial resolution." Powell v. McCormack, supra, 395 U.S. at 516-517, 89 S.Ct. at 1961. That is, the court must determine whether "the duty asserted can be judicially identified and its breach judicially defined, and whether protection for the right asserted can be judicially molded." Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) quoted in Powell v. McCormack, supra 395 U.S. at 517, 89 S.Ct. 1944, 1961. This requirement presents no problem here because the claim presented is an alleged violation of First Amendment rights. The remedy sought is an injunction and declaratory judgment against a military commander. Cf. Ex Parte Milligan, supra. In any event, "a request for declaratory relief may be considered independently of whether other forms of relief are appropriate." Powell v. McCormack, supra at 518, 89 S.Ct. at 1962.
 
 
 14
 The second part of the justiciability question requires a determination "whether the structure of the Federal Government renders the issue presented a `political question' — that is, a question which is not justiciable in federal court because of the separation of powers provided by the Constitution." Powell v. McCormack, supra at 517, 89 S.Ct. at 1961. The substance of this inquiry is also expounded in Baker v. Carr, supra, 369 U.S. at 217, 82 S.Ct. at 710 and includes one or more of the following tests:
 
 
 15
 "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."
 
 
 16
 This part of the justiciability limitation expounded in Baker v. Carr is designed to "define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). Again we need only note the assumptions stated above by Justices Stewart and Brennan in Cafeteria Workers that some conceivable decisions by military commanders would be constitutionally impermissible — e.g. exclusion of civilians from a base because of their religious or political beliefs per se. However broad a commander's discretion is, "patently arbitrary or discriminatory" decisions may be properly adjudicated.[3]
 
 
 17
 A more serious impediment to judicial resolution of this case on the merits at this time is the problem of mootness. The proposed demonstration date has come and gone, and there have been no subsequent requests made of the appellees by the appellants for permission to hold any other demonstrations. Indeed, the Government has advised that the appellee commander, Major General Collins, is no longer the commanding officer of Fort Dix. Cf. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L. Ed.2d 113 (1969). The controversy set forth in paragraph four of the complaint sought quite limited relief for a rally "on Sunday, October 12, 1969, as well as at future occasions." Yet there is no indication that future demonstrations of the type requested here will again be sought or denied by the present or future commanders at Fort Dix. Cf. Two Guys From Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 588-589, 81 S. Ct. 1135, 6 L.Ed.2d 551 (1961); Brockington v. Rhodes, 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969). The "mere possibility" standard of recurrent alleged illegal action stated by United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), is not applicable when the actions questioned are those of the government. See Commercial Cable Co. v. Burleson, 250 U.S. 360, 39 S.Ct. 512, 63 L.Ed. 1030 (1919); Local No. 86, Oil, Chemical and Atomic Workers, Int'l Union, A.F.L.-C. I.O. v. Missouri, 361 U.S. 363, 368-369, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960). Rather two probabilities — recurrence of the objectionable action and impact on the same objecting litigants — must exist.[4] If there is mere possibility of recurrence, there must be certainty of impact. See Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963).
 
 
 18
 The appellants have tried to establish the requisite certainty of effect by alleging a class action. The complaint states that suit is brought on behalf of "all others who seek to exercise their constitutional right to protest certain practices at Fort Dix." But this amorphous reference to persons not otherwise expressly named as plaintiffs is insufficient to state a class action under the requirements of Rule 23(a),[5] Federal Rules of Civil Procedure which says:
 
 
 19
 "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical * * *."
 
 
 20
 Nowhere in the complaint are any persons other than the appellants themselves specified as being within the class affected.
 
 
 21
 There remains one class of disputes which may overcome the above objections to present, as opposed to future, adjudication: those "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The case before us presents no such problem. First, the decision by the commander at Fort Dix is not like a short-term I.C.C. order. Future demonstrations might well have been requested and decisions obtained from the Commander which would still have prohibited demonstrations by appellants at the time of their appeal. The decisions here complained of are no longer in effect because of the limited permission appellants sought, rather than because of anything inherent in the commander's orders. Second, this decision by the commander has not been alleged to be part of a pattern of official actions to elude judicial review. See Jackson v. Department of Public Welfare, 296 F.Supp. 1341 (S.D.Fla.1969); Sprayberry v. Dulaney, 2 CCH Pov.L. Rep. § 10,101 (N.D.Ga. April 17, 1968); 83 Harv.L.Rev. at 1691, note 87; Cf. Campbell Soup Co. v. Martin, 202 F.2d 398, 399 (3d Cir. 1953).
 
 
 22
 We must, therefore, conclude that this case has become moot and is inappropriate for judicial resolution on its merits.
 
 
 23
 Accordingly, an order shall be entered dismissing the appeal.
 
 
 
 Notes:
 
 
 [1]
 Constitution Article I, § 8, Clause 12:
 "[Congress shall have the power] To raise and support Armies * * *."
 Clause 14:
 "To make rules for the government and regulation of the land and naval forces;"
 Clause 17:
 "To exercise exclusive legislation in all cases whatsoever, over * * * all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings; * * *."
 Clause 18:
 "To make all laws which shall be necessary and proper for carrying into execution the foregoing powers * * *."
 Article 2, § 2:
 "The President shall be Commander in Chief of the Army and Navy of the United States."
 10 U.S.C. § 3012:
 "(b) The Secretary [of the Army] is responsible for and has the authority necessary to conduct all affairs of the Department of the Army, including:
 (1) functions necessary or appropriate for the training, operations, administration, logistical support and maintenance, welfare, preparedness, and effectiveness of the Army, * *."
 "(g) The Secretary may prescribe regulations to carry out his functions, powers, and duties under this title."
 5 U.S.C. § 301:
 "The head of * * * [a] military department may prescribe regulations for the government of his department, * * * and the custody, use, and preservation of its * * * property."
 10 U.S.C. § 3061:
 "The President may prescribe regulations for the government of the Army."
 
 
 [32]
 C.F.R. § 552.18:
 "(c) Responsibilities of installation commander. The installation commander is responsible for the efficient and economical operation, administration, service and supply of all individuals, units, and activities assigned or under the jurisdiction of the installation * * *."
 "(d) Entry, exit, and personal search. The installation commander will establish appropriate rules governing the entry of persons upon and exit from, the installation * * *".
 
 
 [2]
 28 U.S.C. § 1331. Federal question
 (a) The district courts shall have original jurisdiction of all civil actions wherein the amount in controversy exceeds the sum or value $10,000 exclusive of interest and costs and arises under the Constitution, laws, or treaties of the United States.
 
 
 [3]
 See also Scharpf, "Judicial Review and the Political Question: A Functional Analysis," 75 Yale L.J. 517, 583-584 (1966); "The Supreme Court, 1968 Term," 83 Harv.L.Rev. 7, 62-71 (1969)
 
 
 [4]
 See generally "Mootness on Appeal to the Supreme Court," 83 Harv.L.Rev. 1672, 1682-1685 (1970).
 
 
 [5]
 But cf. Kahan v. Rosenstiel, 424 F.2d 161, 168 (3d Cir. 1970) where plaintiffs' complaint met the prerequisites of Rule 23.