**MINERSVILLE COAL COMPANY, Inc., et al., Plaintiffs,**

v.

**ANTHRACITE EXPORT ASSOCIATION et al., Defendants.**

**Civ. A. No. 68–428.**

United States District Court, M. D. Pennsylvania.

Nov. 4, 1971.

See also, D.C., 335 F.Supp. 360.

Richard L. Hirshberg, Washington, D. C. Richard Wix, Harrisburg, Pa., for plaintiffs.

Victor Friedman, New York City, for defendant Foreston Coal Co.

Stanley D. Robinson, Paul S. Lipson, New York City, for all defendants.

Russell J. O'Malley, Scranton, Pa., for Lehigh Navigation-Dodson Co.

Franklin B. Gelder, Scranton, Pa., for Anthracite Export Assn. & Blue Coal Corp.

James E. O'Brien, Scranton, Pa., for Blue Coal Corp.

Morey M. Myers, Scranton, Pa., for Lehigh Valley Anthracite Inc., Jeddo-Highland Coal Co. and James Tedesco.

## OPINION

MUIR, District Judge.

The question before the Court is whether to grant plaintiffs' renewed motion for an order that this action be maintained as a class action. The motion will be denied.

In 1968, 64 plaintiffs, all of whom are members of the Independent Miners and Associates (IMA), filed the original complaint. They charged the defendants with a combination to monopolize sales of anthracite to the U.S. Army in West Germany in violation of the Sherman and Clayton Acts.[1] The damages claimed exceed $10,000,000.

In 1970 an amended complaint was filed in which the number of plaintiffs is 18.

Rule 23 of the Federal Rules of Civil Procedure relates to class actions and in sub-¶(a) sets forth four prerequisites to such an action.[2] The pertinent provi-

---

1. 15 U.S.C. §§ 1 and 15.

2. "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is

sions of sub-¶(a) are: "One or more members of a class may sue * * * on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, * * * and (4) the representative parties will fairly and adequately protect the interests of the class."

■ As to the first requirement, the plaintiffs have the burden of establishing the number of members of the class and also that joinder of such members is not practicable. Goldman Theatres, Inc. v. Paramount, 49 F.R.D. 35, 42 (E.D. Pa.1969); DeMarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); Cash v. Swifton Land Corp., 434 F.2d 569, 571 (6th Cir. 1970).

■ What is the class with which we are dealing and how large is it? The plaintiffs defined the class on page 2 of their memorandum of September 23, 1971, as "the class of independent anthracite producers operating in the Southern anthracite field during the period * * * from 1961 through 1968." This is the same definition used by Judge Nealon in this case in his opinion of June 17, 1971, page 2. In the same memorandum the plaintiffs expressed a desire to extend the period through 1971 as to the same producers. However, at the argument on October 13, 1971, the plaintiffs stated a wish first to redefine the class as "IMA Southern Anthracite Field Producers" and then enlarged their request to include persons not members of the IMA who operated in another anthracite field, namely, the Northumberland or Western Middle Anthracite Field. In my view, it

was too late on October 13, 1971, three years after the complaint was filed, and within a month of the time, according to plaintiffs, when the Statute of Limitations will run, to convolute this case further by stretching the class to include producers in a new field.

The plaintiffs submitted on October 20, 1971, a proposed order, again redefining the class as "all members, past and present from the beginning of the year 1961 up to the present time, of Independent Miners and Associates, Masonic Building, Pottsville, Pa., and of Independent Miners, Breakermen and Truckers Association, 516 N. 3rd St., Shamokin, Pa." We will disregard the members of the Independent Miners, Breakermen and Truckers Association because they are from the Northumberland field and will confine ourselves to the class of IMA members so redefined by the plaintiffs.

Is the class so numerous that joinder of all of its members is impracticable? According to the affidavit of the President of the IMA, at the end of 1961 there were approximately 330 independent anthracite producers in the southern anthracite field and at the end of 1970 approximately 125 such producers. In Utah v. American Pipe & Construction Co., 49 F.R.D. 17, 21 (C.D.Cal., 1969) 350 plaintiffs were ordered joined. The court there concluded from prior actual experience that joinder and intervention were far simpler than a class action.

■ At the most we will be dealing with 330 plaintiffs. The class is not so numerous that joinder of all members is impracticable.[3]

---

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

3. If the court grants the pending motion for summary judgment against plaintiffs who are mining companies without prepa-

ration facilities, the maximum number of plaintiffs will probably be 39. The court had intended to act on both motions simultaneously, but the question of whether such mining companies have standing to sue is so complex that a thorough decision on that point probably cannot be handed down within the period of the Statute of Limitations which the plaintiffs claim, will run shortly.

Sub-paragraph 4 of Rule 23(a) sets forth another prerequisite of a class action that the representative parties will fairly and adequately protect the interests of the class. Would they do so here? Do any of the plaintiffs have interests antagonistic to those of the remainder of the class? The situation in this facet of the case is most unusual.

Ten of the plaintiffs executed releases in 1966 in the defendants' favor. These plaintiffs now contend that the releases were obtained by fraud. At the present time the validity of the releases has not been determined. The releases contain a representation that the releasor "knows of no person, firm or entity other than releasor which has * * * or might have" any antitrust claims against the defendants relating to the Army coal purchases. The releases also contained a covenant providing for indemnification of the defendants by such ten releasing plaintiffs for damages which any such other parties or non-releasing claimants might recover from the defendants.

Thus, unless the releases were fraudulent, and that remains to be seen, recovery by any of the non-indemnifying class from the defendants may subject such ten indemnifying plaintiffs to liability to the defendants. At the least, there is a possible conflict of interest between such ten plaintiffs and the others. I cannot find that the ten plaintiffs will of a certainty protect the interests of the class.

In my view prerequisite #1 of Rule 23(a) is lacking and prerequisite #4 is possibly lacking. Under these circumstances I do not reach the question under sub-¶ (b) (3) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In my view this case should not be maintained as a class action. The parties will submit within twenty days hereof forms of an appropriate order to implement this opinion, including but not limited to, amendment of the pleadings so as to delete therefrom allegations as to representation of absent persons.