**Marlene WILLIAMS, on behalf of the minor, Algeron Walker, and Charlene Robinson, a minor, by her next friend Louis Robinson and all other persons similarly situated**

v.

**Helene WOHLGEMUTH, Individually and as Secretary of the Department of Public Welfare, Commonwealth of Pennsylvania, et al.**

**Civ. A. No. 73–88.**

United States District Court,
W. D. Pennsylvania.

Oct. 25, 1973.

---

Judd F. Crosby, Pittsburgh, Pa., for plaintiff.

Louis Kwall, Pittsburgh, Pa., for defendants.

Before ALDISERT, Circuit Judge, MILLER, Senior District Judge, and KNOX, District Judge.

## OPINION

KNOX, District Judge.

This matter is before a three-judge statutory court duly convened pursuant to 28 U.S.C. §§ 2281 and 2284 by reason of an attack made by plaintiffs on certain Department of Public Welfare Regulations with respect to general public assistance of statewide application. Jurisdiction of the court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 to enforce civil rights arising under 42 U.S.C. § 1983.

The facts as developed are relatively simple but, as usual, do not lend themselves to an easy determination as to the applicable law. The original plaintiff, Marlene Williams, brought her suit on behalf of minor, Algeron Walker, who has resided with her for several years as his next friend.[1] Plaintiff sought to bring the action as a class action of Pennsylvania citizens similarly situated alleging the class to be composed of unemancipated minors who, because of the absence of natural parents and relatives, are cared for by unrelated substitute parents who do not receive public assistance.

Algeron Walker was born August 11, 1957, and it appears that he was shortly afterwards abandoned by his natural mother. His father was unknown. Plaintiff, Marlene Williams, has cared for and assumed responsibility for him since he was at this early age. He received a public assistance grant until the summer of 1972 when he engaged in summer work through the Neighborhood Youth Corps. At the termination of his

1. Originally, defendant claimed that plaintiff lacked standing to sue on behalf of the minor. Plaintiff's standing to sue as next friend of Algeron Walker appears sufficiently clear under Rule 17(c).

summer employment, he reapplied for and again began receiving assistance but, after one check was paid, it was discontinued for the reason that the substitute parent, Marlene Williams, was not receiving public assistance since she had an income of $500 per month which made her ineligible.

The reason given for discontinuing assistance was Regulation 3131.12 contained in the Public Assistance Manual which is set forth in full in Appendix I. Specifically, insofar as we are concerned in this case, the section which operates to deny assistance to this unemancipated minor is subparagraph (b) which provides that he receives assistance if he is living with a person other than his parents and has lived with this person's family for a number of years "and this person receives assistance". In other words, if the substitute parent, in this case plaintiff Marlene Williams, is not on public assistance because ineligible, she is unable to receive any assistance for the minor who is living in her home and he is likewise ineligible for assistance. The only exception for this is where there has been a court order placing the child in the custody of an agent or institution and the child has been placed in the home by the agency.

We also have the companion situation which has been joined with this involving Louis Robinson who cares for Charlene Robinson for whom his daughter was caring at the time of her death. She had received Charlene from her natural parents who, it is asserted, neglected her. Louis Robinson likewise is ineligible for assistance because of his social security and pension income. Again we have a situation where there is no relationship and no obligation to support on the part of the non-parent custodian.

The plaintiffs seek a declaratory judgment and permanent injunction to restrain defendants from enforcing these welfare regulations claiming that they violate rights under the Fourteenth Amendment to the United States Constitution to equal protection of the laws and to due process of law. It is claimed that equal protection is violated because it creates two classes of recipients with no rational basis for the distinction: (1) a class consisting of unemancipated minors who live with relatives or unrelated adults who *are* receiving assistance and (2) unemancipated minors living with unrelated adults who are *not* receiving assistance. It is claimed that due process is violated because the regulation in question is asserted to establish a conclusive presumption that such persons are not eligible for general assistance, regardless of need.

### (A) *Class Action*

The action is entitled as a class action and it is represented that the persons in the class are so numerous that joinder of all members is impractical. The complaint in paragraph five states that the plaintiff Walker is a member of a class composed of individuals who are otherwise eligible for benefits under the general assistance (GA) program administered by defendants. This class consists of all otherwise eligible GA recipients who have been or will be declared ineligible for assistance solely because an unrelated individual with whom they live does not receive assistance. On the motion for class action filed separately, it is stated that the class to be represented is composed of unemancipated minors otherwise eligible to receive general assistance from the Department of Public Welfare of the Commonwealth of Pennsylvania whose assistance has been or will be terminated under Pennsylvania Public Assistance Manual Section 3131.-12 because they live with an unrelated adult who does not receive assistance. It is further represented that this class is so numerous that joinder of all members would be impractical.

The trouble is that we are not given any figures to justify the assertion that the class is so numerous that joinder is impractical nor are we furnished any basis upon which to take judicial notice of the number involved.

In Committee to Free the Fort Dix 38 v. Major General Collins, Commanding

Officer, 429 F.2d 807 (3d cir 1970), the court said at page 812:

"The appellants have tried to establish the requisite certainty of effect by alleging a class action. The complaint states that suit is brought on behalf of 'all others who seek to exercise their constitutional right to protest certain practices at Fort Dix.' But this amorphous reference to persons not otherwise expressly named as plaintiffs is insufficient. to state a class action under the requirements of Rule 23(a), Federal Rules of Civil Procedure which says:

'One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical * * *.'

Nowhere in the complaint are any persons other than the appellants themselves specified as being within the class affected."

The evidence as presented in this case offers no light as to how many persons might constitute this class. As far as the record goes here, we have only two of them, to wit: Algeron Walker on whose behalf Marlene Williams brought suit and Charlene Robinson on whose behalf Louis Robinson brought suit. We are given no further indications as to how many people in the Western District of Pennsylvania or in the Commonwealth may have been or are likely to be deprived of public assistance as unemancipated minors living with an unrelated adult who is not on public assistance.

██ In plaintiff's trial brief, page 19, it is stated: "while the exact size of the class is unknown, it consists of all children who have been or will be aggrieved by defendant's policy indicating that the number is likely to run into thousands and that the joinder of all members is impracticable." There is nothing in the record to support this assertion. For ought we know the two individuals mentioned may be the only

ones in the Commonwealth affected by the policy or it may be that there are ten or fifteen others located around the state but we have nothing to support the assertion that the members of the class are so numerous that joinder is impracticable. The burden was on the plaintiffs to demonstrate this and since we are left completely in the dark as to how many are involved, we will deny the class action.

In Stewart v. Wohlgemuth, 355 F. Supp. 1212 (W.D.Pa.1972), a class action was denied because the myraid of different circumstances existing in each individual case would unnecessarily complicate the action and a class action under Rule 23 of the Federal Rules of Civil Procedure would not be a superior method for fair and efficient adjudication of all these controversies. See Tindall v. Hardin, 337 F.Supp. 563 (W.D.Pa.1972), aff'd sub nom, Carter v. Butz, 479 F.2d 1084 (3d Cir. 1973.)

The same is true here but since the decision of Stewart v. Wohlgemuth, supra, the court's confidence therein expressed that the Commonwealth would abide by a decision involving one or two individuals was shaken by the fact that the Commonwealth did not so abide and it was necessary for subsequent actions to be brought in this court in order to compel compliance with the decision in Stewart v. Wohlgemuth, supra.

In addition to the decision of the Court of Appeals for the Third Circuit involving Fort Dix, supra, there are other decisions clearly holding that the burden is upon the plaintiff under Rule 23(a)(1) of the Rules of Civil Procedure to establish that the class is so numerous as to preclude joinder. See William Goldman Theatres, Inc. v. Paramount Film Distributing Corp., 49 F.R.D. 35 (E.D.Pa.1969); Kinzler v. New York Stock Exchange, 53 F.R.D. 75 (S.D.N.Y.1971); Minersville Coal Co. v. Anthracite Export Association, 55 F.R.D. 426 (M.D.Pa.1971).

For these reasons, the motion for maintenance of the case as a class action

which was deferred to the three-judge court will be denied.

### (B) *Equal Protection of the Laws*

We have previously noted that the relevant state Regulation 3131.12(b) (see Appendix I) deprives an unemancipated minor of eligibility for general assistance if the unrelated person with whom he or she is living does not receive assistance. The regulations also make a difference with respect to children living with certain "specified relatives" as provided in 3122.22 [2]. Here if the child is living with such a relative the resources considered in determining the child's eligibility for public assistance are his needs, what resource the child actually has, those that are his legally and those which he has a legal claim to. Ordinarily, a child would not have a legal claim to financial aid from any persons other than his parents under Pennsylvania Law (62 Purdon's P.S. § 1973) and in such circumstances, it would appear that under 3122.22 if the child is living with a specified relative other than one of his parents, he would be eligible for general assistance regardless of the status of the relatives and whether they are receiving assistance or not.

The plaintiff is therefore correct in arguing that this welfare program contemplates that all children must look to other potential resources for maintenance before they are entitled to rely on the state for assistance and that a child's parents are considered a resource to the child to the extent that they are financially able to contribute pursuant to the Pennsylvania support laws (62 P. S. § 1973). As to those children who are not living with natural parents and must live with substitute parents, the effect of the program is to divide these children into two classes. One is a class which lives with and is cared for by non-parent relatives such as a grandmother or aunt.[3] The second class is composed of children who live with and are cared for by non-relatives as is the case with Algeron Walker and Charlene Robinson here. The second class is then divided into two sub-classes. One is where the custodian receives assistance and two is where he or she does not. These two classes and sub-classes are accorded substantially different treatment for general assistance. The first class living with a non-parent relative has the child's needs assessed and investigated and his own resources looked into; whether he has a legal claim for support on anyone or not and, if not, he may be found eligible for support under 3122.22. The same is true of class 2, sub-class 1.

As to the second class, sub-class 2, however, the law provides no investigation as to need if the substitute parent is not receiving assistance and flatly declares that such children are not eligible for general assistance. This is what happened in the case of Algeron Walker here as shown by the findings of fact, discussion and conclusions of law of the hearing officer who held the fair hearing required by the Act. These findings, discussion and conclusions of law are set forth in Appendix II to this opinion. It will be noted from examining the adjudication as to Algeron Walker that assistance for him, an unemancipated minor, was refused to Marlene R. Williams with whom he was residing for

---

2. "*Specified Relative as a Resource.* To determine the need of the child living with a parent or step-parent, see 3234.61. If the child is living with any other specified relative(s), the county staff discusses with the relative(s) the reason the child needs financial aid; the help the relative(s) is giving the child and is willing to continue to give; or the responsibility he is willing to assume for meeting the child's needs. In determining the child's needs, the resources considered are those the child actually has, those that are the child's legally, and those he has a legal claim to. Eligibility of any child who has a legal claim to any property, real or personal, depends on a specified relative's agreement to apply for it and make it available for the child's use or reimbursement (3820)."

3. "Specified Relative" is further defined (subject to certain conditions contained in 3122.2) as including certain blood relatives, adopted relatives, step relatives and their spouses.

the sole reason that she was not eligible to receive general assistance and therefore under the Regulation 3131.12(b) it was correct to discontinue assistance for the care and support of Algeron Walker.

▇ We agree with plaintiff's contention that this classification is irrational, invidious and in violation of equal protection of the laws as required by the Fourteenth Amendment to the Federal Constitution.

In examining the law applicable to situations of this type involving public welfare grants, it is necessary to distinguish cases arising under the program of aid for dependent children as mandated by the Federal Social Security Act and those which involve constitutional questions alone. In this case, we are concerned solely with general assistance furnished by the Commonwealth of Pennsylvania. This is not the case of a program federally funded in whole or in part and thus we are not confronted with the claim that state regulations are in violation of federal law or regulations. For this reason, cases involving these questions are actually not in point, these being such cases as King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In it the court specifically did not reach the constitutional issue. A similar case is Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) involving differentiating between college students and vocational school students under the ADC program. The court in that case put the decision squarely on the statute but did make some remarks indicating its thinking with respect to the equal protection problem. Of similar import is Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970), involving limits on maximum grants for ADC, and Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) where the maximum amount appropriated by a state required a reduction in the ADC grants. In the latter two cases, the court found no violation of the Social Security Act and found a solid foundation for a state's legitimate interest

as a basis for the claimed differentiation.

See also Rodrigues v. Vowell, 472 F.2d 622 (5th Cir. 1973) where it was held that the needs of caretaker relatives as well as the child itself ought to be considered under the ADC program. The question we have here is rather whether there is an invidious, irrational distinction made between two groups. For guidance in this situation, we may, however, rely upon some of the language contained in the opinions in Dandridge and Jefferson, supra.

In Dandridge, the court said (397 U.S. page 483, 90 S.Ct. page 1161): "Although a State may adopt a maximum grant system in allocating its funds available for AFDC payments without violating the Act, it may not of course impose a regime of invidious discrimination in violation of the equal protection clause." * * * "We need not explore all the reasons that the State advances in justification of the regulation. It is enough that a solid foundation for the regulation can be found in the state's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor."

Again, in Jefferson v. Hackney, supra, the court said (406 U.S. page 546, 92 S. Ct. page 1731): "So long as its judgments are rational and not invidious, the legislature's efforts to tackle the problems of the poor and needy are not subject to a constitutional strait-jacket. The very complexity of the problems suggests that there will be more than one constitutionally permissible method of solving them."

Turning to cases which are bottomed squarely on the Fourteenth Amendment, however, we find Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 32 L.Ed.2d 551 (1972) holding that a conclusive presumption that unwed fathers are unfit to rear their illegitimate children, violates the equal protection clause in setting up an invidious and irrational classification. It also violates the due proc-

ess clause in establishing a conclusive presumption without any rational basis.

Turning to Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), we find the court invalidated the one year waiting period for receiving welfare payments on general public assistance as provided by the laws of several states holding that this was irrational and that there was no compelling state interest.

More recent guidance is given us in the decision of the United States Supreme Court Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). While this case involves another program, to wit: the Food Stamp Program, 7 U.S.C. § 2012(e) as amended, it does point the way to the determination which we have reached in this case. Mr. Justice Brennan's opinion points out that the section of the Food Stamp Act in question excludes from participation in the program a household containing an individual who is unrelated to any other member in the household. It says "in practical effect, § 3(e) creates two classes of persons for food stamp purposes: one class is composed of those individuals who live in households all of whose members are related to one another, and the other class consisting of those individuals who live in households containing one or more members who are unrelated to the rest. The latter class of persons is denied federal food assistance."

The court further said:

"Under 'traditional' equal protection analysis, a legislative classification must be sustained, if the classification itself is *rationally related to a legitimate governmental interest.*" Emphasis added.

\* \* \* \* \* \*

"The challenged statutory classification (households of related persons versus households containing one or more unrelated persons) *is clearly ir-* *relevant to the stated purposes of the Act.*" Emphasis added.

\* \* \* \* \* \*

"For if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group *cannot constitute a legitimate governmental interest.* As a result, '[a] purpose to discriminate against hippies cannot, in and of itself and without reference to [some independ-' ent] considerations in the public interest, justify the 1971 amendment.' Moreno v. United States Department of Agriculture, 345 F.Supp. 310, at 314 n. 11."

\* \* \* \* \* \*

"Thus, in practical operation, the 1971 amendment excludes from participation in the food stamp program not those persons who are 'likely to abuse the program' but, rather, only those persons who are so desperately in need of aid that they cannot even afford to alter their living arrangements so as to retain their eligibility. 'Traditional' equal protection analysis does not require that every classification be drawn with precise 'mathematical nicety'. Dandridge v. Williams, supra, 397 U.S. at 485, 90 S.Ct. [1153], 1161. *But the classification here in issue is not only 'imprecise'; it is wholly without any rational basis.* The judgment of the District Court holding the 'unrelated person' provision invalid under the Due Process Clause of the Fifth Amendment is therefore affirmed."

The only allegedly legitimate state interests which would justify the classification in this case allowing public assistance for those who are living in the households of specified relatives but denying it to those who are living with other persons who are on assistance is the alleged interests of the state in the child welfare program.

Depositions have been taken of the Director of the Child Welfare Services

of Allegheny County. The court postponed consideration of this case until such depositions were taken and affidavits supplied as to the extent and basis of the Child Welfare Program. The Child Welfare Program in Allegheny County appears to be provided under 62 P.S. § 2305 which provides for the care of dependent, neglected or delinquent children.[4]

The evidence shows that in the Algeron Walker case the caseworker in public assistance suggested that the Child Welfare Services might take over and provide care for Algeron Walker but when the Child Welfare Services were called, it appeared they would not provide care for Algeron Walker unless he was first taken from Marlene William's custody and placed in the custody of the court which would then place the child with Child Welfare Services for placement in a foster home which might or might not be the same home as that from which he came. The depositions of Thomas N. Carros make it clear that it is not the function of the Child Welfare Services to provide funds for needy persons.[5] This is the function of the Department of Public Assistance. His organization only takes over when the child is placed in its custody by the court and then they have various criteria for determining what is the proper

foster home in which to place the child. Naturally, Marlene Williams and Algeron Walker fear that their relationship extending over a long period of years is likely to be broken up if this procedure were to be followed.

It is apparent that the Child Welfare Services as operated by the various institution districts of the various counties do not supplement public assistance. They do not cover children who are not dependent, neglected or delinquent, and would provide funds for Algeron Walker only in the event he was first taken from Marlene Williams' custody by the court and then placed back in her custody, treating her household as a foster home. It is apparent that the gears of these two programs do not mesh and that they serve two different purposes. It cannot be said that the Child Welfare Services furnish the legitimate state interests which would justify the invidious and irrational classification here present between minors living with relatives as substitute parents and minors living with non-relatives as substitute parents some of whom are on assistance and some of whom are not, the latter being ineligible to receive public assistance for the minor.

While it may be said that the state has a legitimate interest in seeing to it the minors are properly cared for, this

---

4. *"Powers and duties of local authorities as to children.*

The local authorities of any institution district shall have the power, and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty to provide those child welfare services designed to keep children in their own home, prevent neglect, abuse and exploitation, help overcome problems that result in dependency, neglect or delinquency, to provide in foster family homes or child caring institutions adequate substitute care for any child in need of such care and, upon the request of the court, to provide such service and care for children and youth who have been adjudicated dependent, neglected or delinquent.

No child under the age of sixteen years shall, unless he is mentally or physically handicapped, and no other care is available for him, be admitted to, or maintained in, an institution conducted by the local authorities

other than a hospital or sanitarium. 1937, June 24, P.L. 2017, art. IV, § 405; 1960, Jan. 7, P.L. (1959) 2100, § 1; 1961, Aug. 7, P.L. 938, § 3; 1965, Dec. 1, P.L. 1003, § 1."

5. Thomas N. Carros, Director of the Child Welfare Services of Allegheny County, testified that the agency must get custody of the child before it furnishes services (see depositions, page 5) that the agency provides no financial assistance (page 10) and would give no help to the unrelated adult (page 11). The unrelated adult would get the child back only if approved for a foster home (page 14). This agency does not supplement public assistance grants and has no relationship to the Department of Public Assistance or to the Public Assistance program (pages 20, 44). He specifically stated that the agency had no obligation to provide services to every child who had been refused public assistance. (page 42).

is true not only of minors living with their parents but also minors living with specified relatives and living with non-relatives who are receiving assistance. In neither one of these cases does the state seek to disturb a relationship of long standing by taking custody under court order and placing the child with the Child Welfare Agency. It is only in the case of a child who is living with a non-relative who is not on assistance that the state, according to the evidence in this case, would seek to take the child away from the non-relative if otherwise being treated properly and establish the child's status as ward of the court.

To state these results is sufficient to show how irrational and invidious the classification under the Department of Welfare Regulations with which we are dealing actually is, and we therefore find plaintiffs have been denied the equal protection of the laws.

In view of our conclusions holding these regulations to be invalid for violation of equal protection of the laws, it is not deemed necessary to consider the asserted violation of due process.

Findings of fact and conclusions of law sufficiently appear in this opinion and the same is hereby determined as compliance with Rule 52(a).

Counsel for the plaintiffs are directed to submit an appropriate order and final judgment disposing of this case in accordance with this opinion within 10 days from the date of this opinion with notice to counsel for defendants.

JOHN L. MILLER, Senior District Judge, dissents from the court's holding the regulations to be invalid.

## APPENDIX I

*"Regulation 3131.12 Unemancipated Minor*

If a minor child who is unemancipated *meets the eligibility requirements for GA, and is not eligibile for ADC or AD,* he receives GA if:

a. He is living with his parent(s)—natural, step, or adoptive—who are exercising responsibility for his care and control; or

b. He is living with a person other than his parents, and has lived as a member of this person's family for a number of years or since infancy; and this person exercises responsibility for the child's care and control; *and this person receives assistance.*

A Court Order committing a child to, or placing a child in the custody of an agency or institution does not affect eligibility for GA if (1) the child is not removed from his home, or has been returned home, and (2) the relative exercises responsibility for care of the control of the child. If the child is removed from his home and placed in the custody of the County Authority by a Court Order, the child is not eligible for GA.

A minor unemancipated child is not eligible for GA if he is a deserted or abandoned child who is ineligible for ADC because the specified relative does not consent to have a notice sent to the District Attorney." (Emphasis added.)

See Appendix II on next page.

APPENDIX II

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF PUBLIC WELFARE
Fair Hearing Appeal

APPEAL OF: Marlene R. Williams          Case No. L 254, 692–D
2031 DeRuad Street
Pittsburgh, Pa.  15219

## ADJUDICATION

*Opening*

This is an appeal from the decision of the Allegheny County Board of Assistance to discontinue general assistance for a non-related child living with her, appellant herself not being a recipient of assistance and this not being a temporary period of crisis in the child's life.

The appeal and request for a hearing was made by appellant in written form dated October 16, 1972. Notice of hearing was sent to all interested parties by letter dated December 26, 1972, that the hearing had been arranged for Monday, January 15, 1973, at 10:30 a. m., in Room 1604 Pgh. State Office Building, 300 Liberty Avenue, Pittsburgh, Pa.

Theodore H. Schmidt, Esq., Hearing Officer, presided.

*Issue*

Whether appellant, who is not a recipient of assistance herself and who has resided with a non-related child for fifteen (15) years is eligible to receive general assistance for the care and support of said non-related child.

*Findings of Fact*

1. Appellant is a non-assistance member of a family unit of two (2) consisting of herself and a non-related child, and receiving general assistance for said child in the amount of $132.50 per month since September 11, 1972. Said child has been residing with appellant for fifteen (15) years.

2. Payment of general assistance to appellant for support of said child was discontinued as of October 18, 1972, under the Requirement of Manual Regulation 3131.12b.

*Discussion*

Manual regulation 3131.12b provides "If a minor child who is unemancipated meets the eligibility requirements for GA, and is not eligible for ADC or AD, he receives GA if . . . . . He is living with a person other than his parents, and has lived as a member of this person's family for a number of years or since infancy, and this person exercises responsibility for the child's care and control and this person receives assistance.

Appellant is not related to the child and she does not receive assistance for herself. The child has lived with appellant for fifteen years, therefore this is not a temporary period of crises in her life.

*Conclusion of Law*

By reason of the terms of Manual regulation 3131.12b appellant is not eligible to receive General Assistance and the Allegheny County Board of Assistance correctly discontinued assistance for the care and support of said non-related child.

Jan. 24, 1973          (s) Theodore H. Schmidt
Date                        Theodore H. Schmidt
                            Hearing Officer

———◆———

JOHN L. MILLER, Senior District Judge (dissenting).

The majority conclude the Department of Welfare Regulation now before the Court is irrational and creates an invidious classification in violation of the equal protection of the laws. I differ and believe regulation 3131.12 to be a reasonable or rational effort upon the Commonwealth to tackle one aspect of the larger problems of the poor and needy. This conclusion is in part based upon my view regulation 3122.22 is applicable to that program identified as "Aid to Dependent Children (ADC)" which is but one of many programs administered by the Commonwealth. Regulation 3122.22 has been relied upon by plaintiffs' counsel and the majority in their analysis and considerations of the alleged disparity of treatment of minor general welfare applicants. My difficulty with this approach is the application of different regulations pertaining to two distinctly separate assistance programs, Aid to Dependent Children vis-a-vis General assistance, to arrive at an equal protection violation. It is subsumed that regulation 3122.22 is applicable to general assistance even though its short title in the Welfare Manual appears under the heading "Aid to Dependent Children." Set aside are the significant distinctions between existing assistance programs administered by the respective defendants. In our case plaintiffs are general assistance applicants. Although acknowledged, forgotten are the clear social purposes and scope of the programs of federal interest as distinguished from state assistance to the needy—general assistance.

Regulation 3122.22 is an implementation of the federal program mandated by the Social Security Act and places emphasis upon maintaining the unemancipated minor in the family unit or family structure, whereas regulation 3131.12 speaks of *general assistance to minors who are not eligible for ADC or AD*. (Emphasis added). The majority interweaves these two regulations in arriving at their ultimate finding of a denial of equal protection. If one considers the emphasis upon the family unit or family structure of the federal programs, the diverse and varying categories of welfare programs and specifically the child welfare program and the informal placement arrangement acknowledged by Mr. Hardin, the total social welfare structure and policies of the Commonwealth can be characterized as a reasonable effort to meet the needs of all its citizens. The Commonwealth in its effort does not violate the equal protection clause because the classifications made by its law are imperfect. The eligibility criteria for general assistance minors not residing with parents has some "reasonabls basis" when considered in light of the federal and state priorities emphasizing the maintenance of the unemancipated minor child in the family unit, that is, residing with his or her parents or relatives; and, the Commonwealth's efforts, within constraints of its funds, to provide general assistance to those minors residing not in foster homes or state fa-

cilities but with other persons who have voluntarily assumed the responsibility for the minor's care and custody. As the Supreme Court observed in Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), "[i]f the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' [Citation omitted.] The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical it may be, and unscientific." [Citations omitted.]

The Fourteenth Amendment cannot be construed to empower this Court to strike down the Commonwealth's regulation because it may be unwise, improvident or inconsistent with the views of the judges as to what constitutes wise economic and social policy. Dandridge v. Williams, supra. While different policy judgments are possible, it is not irrational for the Commonwealth to limit grants of public assistance for unemancipated minors, not eligible for ADC or AD and living with a person other than a parent, to persons who are receiving assistance. With the stresses upon its available general assistance funds, it is a reasonably legitimate policy judgment of the Commonwealth to undertake to preserve the unemancipated minor children living with his or her parents in the family structure. Such policy would be consistent with the federal policy as set forth in the Social Security Act and Amendments, 42 U.S.C.A. § 601. Whether or not one agrees with the Commonwealth's determination, there is nothing in the Constitution requiring it to choose between attacking every aspect of a problem or not attacking the problem at all. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). The Supreme Court in Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.

Ct. 1724, 1731, 32 L.Ed.2d 285 (1972), acknowledged that legislative efforts to come to grips with the problems of the poor and needy are "not subject to a constitutional straitjacket" and observed, "[t]he very complexity of the problems suggests that there will be more than one constitutionally permissible method of solving them." "A legislature may address a problem 'one step at a time,' or even 'select one phase of one field and apply a remedy there, neglecting the others.'" Id. Furthermore, the Court in James v. Valtierra, 402 U.S. 137, 142, 91 S.Ct. 1331, 1334, 28 L.Ed.2d 678 (1971) observed " * * * a lawmaking procedure that 'disadvantages' a particular group does not always deny equal protection."

The Court today interprets social and economic policy of which we are not the arbiter; they are appropriately a matter for the legislative forum.

Finally, the Supreme Court's re-emphasis in Jefferson v. Hackney, 406 U.S. 535, 551, 92 S.Ct. 1724, 1734, 32 L.Ed.2d 285 (1972) of its earlier observation in Dandridge v. Williams, supra, is appropriate:

"We do not decide today that the [state law] is wise, that it best fulfills the relevant social and economic objectives that [the State] might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. . . . [T]he Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."